2015-3004 Bartel v. Alcoa. You may proceed. May it please the Court, Kevin Levy of Phelps Dunbar LLP in New Orleans on behalf of the shipowner defendants in this case. We have a number of issues in this case, I suppose, and some, I was talking about it with opposing counsel this morning, some questions as to what order or what issue should be presented first. But I'll start talking about what I believe to be one of the underlying issues to the whole case, which is whether or not removal under Section 28 U.S.C. Section 1442 was proper. This, of course, the magistrate judge and the district judge ruled that it was not proper and remanded the cases. Can I just, I mean, maybe this is too fundamental. I'm really having trouble understanding sort of the basic facts of the case, not the removal question per se. But what are your clients accused of doing wrong? I understand failure to warn, I get that. But these plaintiffs, what were they doing that exposed them to asbestos that you allegedly didn't warn them about, your client didn't warn them about? They were just working on vessels in different capacities. I mean, were they working with asbestos products or is it just that there was asbestos kind of in the lining of the ship? Where was the asbestos allegedly? The asbestos was primarily in the engineering department. Where? On any hot pipes, on any hot furnaces. So it's like the lining of these pipes and stuff? The outer lining a lot of times was wrapped in asbestos. And that's inherent in the ship, intrinsic to the ship, you guys didn't put it there? Absolutely not. And you all didn't give them some asbestos product to work with in some way on the ship? No. As far as you know. Allegedly. Right, there might have been minor repairs here or there, but we don't have any evidence of that because most of these cases, these seamen served 20, 30, 40 years ago, so discovery is difficult. No, I know. But in general, some engineers may have dealt with asbestos gaskets or repairing some of the outer wrappings of these hot pipes by the steam engines or the diesel engines. Other workers would presumably have been exposed to very little asbestos. But you have hit a very, very important point in our opinion. The magistrate judge, and then adopted by the district judge, he kept looking at the failure to warn. There's a whole lot more going on here than failure to warn. And all of the asbestos that was on these ships was put there by the government when it manufactures these ships, or it was put there by somebody else when the government purchased them. Yeah, I just didn't understand how. I mean, there's no allegation that I could find about how these guys got exposed to the asbestos. Again, allegedly and all that. It just said they worked on the ship. So from your perspective, the ship had asbestos sort of intrinsic in it. Maybe there were some repairs to it, but there they were. And the ship was given to you, was not built by you. It was built by the Navy or built at their direction. Correct. Okay. And so then your liability allegedly is, okay, we have a ship with a bunch of asbestos on it. You should still warn us about that. Where would that duty to warn emanate? Is it from the employer-employee relationship, or is there any other source of that? As alleged, I assume the plaintiffs are alleging it would be solely from the employer-employee relationship. We also have issues as to when asbestos became a known hazard with respect to the employment of these men. Some of them may have been working on ships before the Coast Guard or others realized that asbestos was causing problems on ships and started issuing orders in, I believe, 1980 or so. Okay, and then their argument is that even if the asbestos is put there by or at the direction of the government, there is nothing, no directions to you one way or the other on warning, and therefore there's no governmental involvement in that. So can you respond to that? Yes, Your Honor, and that's a major point of our complaints about what the magistrate judge did. He focused only on the duty to warn. There's a lot more going on here. The plaintiffs specifically alleged unseaworthiness, which is liability without fault. So any condition of a ship, even regardless of fault. So there's no failure to warn. It's not a negligence issue, they have alleged. And we could be liable, if they're correct, under the theory of unseaworthiness. And that would get to the ship itself. For the ship itself that the government gave to us, a government vessel that they gave to us, and the only reason we and the seaman were on the vessel was because of our contract to operate the vessel for the government. The magistrate judge did not address that. He looked at the manufacturer and contractor-manufacturer cases, which really don't apply here, and then he focused solely on his duty to warn. So you're saying since the allegations transcend that, then there are allegations that would pull in the government's conduct in giving you this unseaworthy, allegedly, ship. Absolutely. For these people to work on. Okay. Well, wouldn't that apply to every single case with the vessel then? Only USNS vessels. I mean, that's a huge. . . I mean, it's just that makes every case. That's not a very good. . . No, if I may, Your Honor. Help me on that because. . . It's only USNS vessels or vessels owned by the U.S. that are operated by contract operators. For most of the United States history, we had a pure private merchant marine. Right, but now. . . The ships were privately owned, privately constructed. So it's not a very. . . It may not be a very large class of vessels. It is just these USNS vessels, a lot of them built during World War II, that were then put into the ready reserve fleets of some kind and operated by contract operators. But it would not be every vessel case. But every vessel that had been ever owned by the U.S. or built by the U.S.? Well, you're saying operated under contract with the U.S.? Right, operated. If the U.S. owned it and then sold it, would you claim federal officer removal there? No, I think not. I mean, not under this analysis, no. Because we would not be acting as an agent of the United States. I mean, the contract specifically says that we are to act as an agent of the United States and operate the vessel for the United States and do what the United States would have to do on its own if they didn't hire us. Okay. Which is how we also get into derivative immunity and issues like that under the Public Vessels Act and the Suits and Amorty Act. Can you help me? What are your best cases that say that it doesn't matter that the federal officer defendants are not in the case anymore? I have not found a lot on that, Your Honor. It seems like that's a really important question. They're not there anymore or does it matter? In the Fourth Circuit, it does not matter. The Fourth Circuit seems to have a strict rule that if the case is properly removed, the court has no discretion to remand any portion of the case. And that's 77 Fed 3rd 1442 and 14 Fed 3rd 222. That's the Fourth Circuit rule. I'm looking at Wright and Miller, which is what I turn to lots of times when I'm having trouble finding anything else. So do I. And, I mean, with respect to circuits other than the Fourth Circuit, and there do not appear to be a lot of cases, but they say then it would depend on considerations of comity, federalism, judicial economy, and fairness to litigants. But isn't removal judged at the time of removal? And they were in the case at the time of removal. So isn't that what we would look at? Yes, Your Honor. That's what I would argue. I mean, I think that's our rule pretty clearly that removal is judged. I think that's a fairly universal rule. Removal is judged at the time of removal. And at the time of removal, they were in the case. Right, and subsequent developments under a lot of other theories do not do away with the original removal. It was proper. I just have not found a lot of cases on the federal officer removal per se. Can I ask you, there's a question in terms of like you didn't present enough evidence, and they keep saying all you did was give a vessel card, but then you have this big, long contract that's Record Excerpt 16, and it looked like that's in the record in the district court. So is that not in the record in the district court? That is in the record with respect to one of the three cases. We did not yet, we were not yet able to get the contracts going back 20, 30, 40 years for the other vessels. Did you seek more time to gather all that? No. Okay, so at least, but then that would affect that one case then that we have that contract. And then was there some averment that that contract was similar to the other contract? Yes, Your Honor. Okay, and that's what this vessel card was supposed to represent? Right, showing that it was a U.S. business vessel. Well, obviously, Your Honor is very familiar with the law, but this type of removal is supposed to be liberally construed as opposed to most removals. Well, so let me ask you about the Jones Act then. You said that the Fourth Circuit says, look, if it's federal officer, you know, your period end of story, but then there's some indication that Jones Act, well, we know Jones Act's not removal. There's some indication that the way to handle that is remove the whole thing and then sever the Jones Act and send it back. Do you have an argument that if the federal officer defendant was otherwise proper removal, that the Jones Act can remain with it, or do you agree that it has to go back? Well, you know, I think the magistrate went through those cases fairly thoroughly and said he could not find. I think he specifically said he could not find any authority indicating whether or not 1445 trumped 1442, which seems to be the state of the law. It's not clear as to what would trump what. But in this case. What's your argument then? In this case, the difference is these are not pure Jones Act cases. Because these are government vessels, these cases arise actually under the Public Vessels Act and the Suits and Amnesty Act, so they're not really Jones Act cases. That's a limited waiver of sovereign immunity by the government, which uses the Jones Act as like the applicable substantive law, but it's not considered a Jones Act case. What if we don't buy that and think that the Jones Act case claims are viable? So how do we work it out? Well, my argument would be that a federal officer is entitled to much greater protection than the plaintiff's right to proceed in state court. And, you know, a lot of these cases under 1442. And there's no federal officers here. Well, we're an agent acting under the authority of a federal officer. I'm just pointing out that that's your argument, that the federal beats state, state right of plaintiffs. Well, I think it's important. Ultimately, some of this does affect the United States in a very real way. Do you have an indemnity claim against them? If you're held liable for an unseaworthy vessel that they gave you, do you have some sort of right of indemnity or something against the government? How would they get involved? No, but the next time I've represented some of these contract operators for a lot of years, the next time the contracts come up for review or rebidding, the prices will go much, much higher under scenarios like this. Because you can't get an indemnification from the government for that. So I have a question. I'm concerned that the way that you construe it, that you conflate acting under with the causal nexus. The causal nexus seems to collapse just because you say because it's this federal vessel, that it's the government vessel. And the Winters case had a very strict causal nexus. And so I'm concerned that there's not a real causal nexus for the—the government is not maintaining control of your company. You can do what you want out there. And I'm concerned that you conflated acting under and causal nexus and that Winters would cut against you. Can you address all of those things, please? Well, I think the causal nexus argument became, or surfaced a lot in the magistrate's rulings with respect to failure to warn. In terms of a causal nexus for the unseaworthiness claim, for the asbestos being on board the vessel, we would not have been aboard that vessel but for our actions as a government agent. We would not have had these employees aboard the vessel but for our actions as a government agent. And in the Willingham case, the court specifically looked at a federal penitentiary case, alleged prisoner abuses, and basically said as long as everybody's there because of the federal officer involvement, it's not necessary to come in and prove exactly what was done or that you were ordered to do something. Okay. The Fifth Circuit, I believe—I'm sorry to interrupt, but there are some cases just showing— and acting under, to me, some of the cases conflate that too. So it makes it hard. So do you concur, though, that with regard to the failure to warn, the magistrate judge's opinion makes a strong point that you're not acting under the control of the federal government regarding failure to warn? I mean you've turned to unseaworthiness today. Right. And I take from that. Perhaps you agree that you have a tougher row to hoe under what the main claim of the case is, failure to warn. I don't think that's the main claim of the case at all. Okay. Do you agree that you have a tougher row to hoe with failure to warn and that there's something to the magistrate judge's analysis in failure to warn? Not really because a number of cases say that you don't have to prove each and every little act of— each and every little action does not have to be directed. But there's no directed action at all at this point. All you've got is the ownership of the ship by the government. That's what you're riding with and that only. Well, that and the contract, which does impose certain obligations and duties. For example, we can't do any maintenance or anything without the government's approval. So if we wanted to go walk around and stencil warnings on the ship, we'd need government approval to do that. So there are government involvement issues in the failure to warn issues. But they're not controlling your work in any way. Other than to the extent that you want to do work that affects the vessel in some way, you have to get their permission. They're not telling you how to do the work. Well, there are broad requirements in the contract for us to follow any of their directions. Well, other than following some directions or following applicable laws, you can do what you want out there. Right. Not you personally. But I think under the tests, including under the Fifth Circuit case of State of Texas v. National Bank of Commerce, they allowed 1442 removal for a private bank serving military installations where the bank operated only through powers enumerated by the Treasury Department and filed monthly letters and monthly reports with the department. The Department of the Treasury was not giving them specific directions and specific instructions, but they were allowed to remove the case, which is why we think the magistrate judge also, he conflated things because whether we prevail on the merits with some of this is for the merits, not for removal purposes. Can you just remind me, did you thoroughly brief the unseaworthiness point before the magistrate judge? It was mentioned in there, yeah. Mentioned? I mean, this is a horse you're riding today, and I'm wondering if it's thoroughly briefed. And did you point this out in a reconsideration motion or something to the district court? It was argued, yes, Your Honor. The magistrate was the one who seized unfairly to warn. We've handled these cases for years, and these Siemens asbestos cases almost always come down to unseaworthiness. That's the easy remedy without fault that they pursue. So you weren't anticipating this failure to warn being the star of the show? Correct. But once it was, did you seek any kind of rehearing that says unseaworthiness, says it doesn't matter if there's control? Yes, we argued that. On rehearing? I'm asking if you sought rehearing. We moved for review of the magistrate judge's report and recommendation. We filed objections to the magistrate judge's report and recommendation. And that was the main objection? And then filed for reconsideration. No, we objected on all cases. But is there an objection that says unseaworthiness, and the court's omitting this, and just by nature of being out there on the vessel that belongs to the government, that's going to be good enough? Is there any sort of argument like that raised either both in your initial briefing and in your post-ruling briefing? It was argued, Your Honor, maybe not as extensively as I'm arguing it today, but it was argued. I mean, that was a part of the case. Okay. I think I'm out of time unless you have other questions. May it please the court. I'm John Cardella from the Jacques Admiralty Law Firm in Detroit. For the plaintiffs, Judge Haynes, to just quickly address your initial questions and concerns about how these guys are exposed. Every merchant seaman on these vessels is exposed, exposed 24 hours a day, exposed everywhere they are. I'm asking how. They're exposed because the asbestos is contained in the lagging, which is the outer covering insulation of pipes, steam pipes. Pipes that were on the ship to begin with. Absolutely. Okay. Absolutely. That's what I was trying to understand, if there was some separate asbestos-containing product that was being handled on the ship. Yes. Or if it was the ship itself. Yes. But there is. Tell me about that. Because of the nature of these vessels, they're constantly in movement. They're constantly rocking. They're vibrating. They're pounding. The asbestos is constantly in a state of being degraded, and they have to be repaired. Were they sitting on the ship manufacturing brakes made of asbestos? No. The ship itself had asbestos linings that has to be repaired and all that, and that was the exposure. I was just trying to get that clear in my head because, frankly, your petition is not real clear. And so I was just trying to get in my head what these guys were doing exactly. Right. Do you disagree with your opponent in his explanation of what they were doing? Yes, because he vastly understated it. Okay. They're constantly exposed to this stuff. They're constantly making repairs to lagging. But as to where the asbestos was, it was intrinsic to the ship and then had to be repaired. You don't disagree with that. You just disagree with the amount of time they spent dealing with it. Right. Okay. So then we get to what's the basis of negligence or what's the basis of the claims. It's Jones Act negligence and it's unseaworthiness, which is a form of strict premises liability. These two things are known as Siamese twins. They're separate and distinct conceptually, but they work hand-in-hand with one another. Now, Judge Elrod was absolutely right in saying that, look, their better argument is unseaworthiness. And they have a way tougher row to hoe with respect to Jones Act because that's negligence. That's negligent operation. It's negligent supervision. It's negligent failure to warn. Okay, but it seems to me if one cause of action brings up the federal office defendant, putting aside the special Jones Act thing, but just in general, if you have five causes of action and one of them is removable, then the whole case is removable typically. And then you look at this issue of whether 1445 trumps 1442 and all that, which we're not to yet. So if he's right on the unseaworthiness, that that implicates the ship, Quah ship, which is owned by the U.S. and which any alterations to would have to be approved by them and so on and so forth, then what's wrong with that argument? Even if he could have argued it heavier in the district court, he made the argument. What's wrong with that? What's wrong with it is that it ignores the negligent aspects of the Jones Act. So what? I mean if you have both a failure to warn problem and an unseaworthiness problem, and the unseaworthiness problem is a federal officer defendant removal defense and all the three elements, putting aside the 1445 Trump issue, why isn't that good enough to sustain the removal? Because they've shown no evidence of the causal nexus between the federal government specifically directing them what to do and how to do it with respect to the operation and maintenance of that vessel. And that goes to the seaworthiness of the vessel because seaworthiness isn't just about the condition of the vessel when they got it. Maybe the government delivered it in a seaworthy condition. If it became unseaworthy during the course of the voyage, they're responsible for that. But the asbestos isn't because it already had the asbestos in it. It's intrinsic to the ship. That's your whole point. They're having to repair all this asbestos lining because it's intrinsic to the ship. It's not like it was lined with lead, and now they're replacing it with asbestos. Well, you are right. We have no way of knowing that the ship was unseaworthy at the time it was delivered or contracted to the ship owners. I slept under a wrapped exhaust pipe for three years on a Navy ship in the war. But that luckily did not have any asbestos that I had to breathe. We don't know whether the ship was unseaworthy when these ship owners got this case. I mean the ship operators got the case, the ship. So that's a friendly question. Right, right. No, I understand. Thank you, Your Honor. No, but you're right. And, look, I think we're losing sight of the forest for the trees here with unseaworthiness. The issue before the court, frankly, is whether or not there was a causal nexus between the directions of the federal government and these employers. But, see, I'm just not ready quite to give up on that because it seems to me your allegations are, as I understand it, and your allegations are very broad and vague, that the ship was unseaworthy. This is owned by and then operated, owned by the U.S. government at the time and operated by your opponents, okay? It's not like they sold the ship or something like that. And that it had asbestos intrinsic to it. And so not that the asbestos was added by the ship owner defendants, but that it was already there and was being repaired and so on and so forth. Am I misunderstanding? Because that's why I asked what the facts are. Right. All right. So if your point is that it's unseaworthy because it has asbestos on it, your own allegation is that's everywhere on this ship from the get-go. It was designed that way. It was designed to have asbestos. Asbestos is fire resistant, and that's why people used it so much until it started causing so many problems. And these defendants were, at least one of these plaintiffs was employed by these defendants on one of these ships in 1994, at which time they knew or reasonably should have known. Okay, so you may have a winning claim on the merits. The question goes to the federal government's involvement in the actual problems that you allege, and that's why I was trying to understand what you allege. And I get the failure to warn, but it also seems to me if you're saying the ship was designed this way, they're not allowed to strip all the asbestos and replace it with lead, are they, without the government's approval because it's a government ship. But they're obligated to take proper precautions with regard to the use of asbestos and asbestos-related products on the vessels. They're responsible for making sure that there's proper procedures, proper respiration, proper disposal of the asbestos. Is that your unseaworthiness claim simply by showing that the ship was designed with asbestos all over the place, exposing workers to asbestos all over the place? Is that a winning unseaworthy claim, or do you have to show something else? We'd have to show – unseaworthiness can also go to supervision. It can go to how the ship is crewed. An unseaworthy ship – a crew member can be unseaworthy. A method of doing something can be unseaworthy. That's not my question. My question is, can you win an unseaworthiness claim by showing that you had a ship covered in asbestos that requires repairs on asbestos parts of the ship, and that's it? That's all you have to – I mean, and then that asbestos is a dangerous product and all that. If that's all we had, probably not enough, no. Okay, so what else would you have to show? But we have more than that, and we have the Jones Act, and we have unseaworthiness. We have these so-called contracts that aren't contracts at all. They don't at all indicate that the government gave any direction whatsoever with regard to how these ships were supposed to be run. These ships – it's really sort of analogous to a bareboat charter where somebody owns the vessel, bareboat charters it to an operator who will eventually own it at the end of the voyage or several voyages. And this is an analogous situation. They have a duty to inspect the vessel. They have a duty to run the vessel. These are their employees. They're their crew members. They're responsible for their employee crew members. The only thing – Do you understand she was asking you that because she's trying to decide if there is a separate freestanding unseaworthiness claim that only has to do with the government? And if so, then you lose. Potentially. Well, but we don't even have an unseaworthiness claim against the government. Why do you have an unseaworthiness? It's not meant to say, oh, can you make out your unseaworthiness. She's asking if you have one because she's trying to say – I assume the question goes to whether or not there's a freestanding federal question in the case. Well, not so much a freestanding federal question but whether your cause of action implicates the action of the federal government that then could potentially provide this causal nexus. I'm just trying – because I understand the failure to warrant issue. I didn't see this unseaworthiness addressed very much by the magistrate, and so it's making me wonder. You're saying that's kind of a – it's an easier case. It requires less proof. It goes to the condition of the vessel. I agree with Judge Riefle. We don't have the details of the condition of the vessel, but we know that it was owned by the government, and therefore they couldn't just wholesale redo this whole ship and take out all the asbestos without governmental approval. And that's why my question is would that be enough to show your unseaworthy claim? Not do you not have more. I mean I'm sure you think you have more, and that's fine. I mean your merits case may be terrific. I don't know. Well, yes. I mean I think we have more even with respect to unseaworthiness. I don't think we necessarily by definition lose unseaworthiness only because the vessel was supplied by the government. We don't lose unseaworthiness cases when a ship is delivered by a manufacturer. We don't lose unseaworthiness for that. Well, I don't mean that you lose the case. I mean do you make the case they're operating a ship that's full of asbestos, but it's full of asbestos because that's what the government designed and owns. I mean they didn't sell it to the shipowner defendants as I understand it. The shipowner defendants are operating it for the government, so they own it, the government. And they've got this ship that's full of asbestos, and that's what you're saying is unseaworthy about it. You're not saying it had a big hole in it and sunk. But it's not just what I'm saying. Unseaworthiness can encompass a whole lot of other things than simply the vessel itself. It encompasses the actual crew members, their training, their competence, their direction. And, look, there's certainly an overlap in that type of unseaworthiness with Jones Act negligence. So, again, yes, I think we do have more. Okay, so let me ask you to address the 1442 versus 1445. Let's just assume, arguendo, that we conclude that at the time of removal there was a viable federal officer claim so that 1442 removal would otherwise be proper. But we have a Jones Act claim, and let's assume we discount this notion of the sort of fraudulent Jones Act or whatever it is, the murky Jones Act, and we think there is a Jones Act. What do we do then and why? Well, I mean I think at the very least the Jones Act case would have to be severed and remanded to state court. Should we do that or should we send the whole thing back? I think obviously you should send the whole thing back. Why? Because, you know, when we're looking at federal maritime statutes in their relationship to general maritime law, we tend to go with the statute. We tend to be informed by the statutes when we're looking at what do we do with general maritime law. If indeed the Jones Act case is not removable because of 1445 and if that trumps 1442, then I think that as a matter of practicality you have to remand the unseaworthiness claim, the general maritime law claim. What's your best authority for that? Well, I think it's gavy rough. It's a Supreme Court case. It's a venerable case from 1935, but it – that doesn't mean – It has long been the law. Exactly. It is well established, I would say. And look, they made a clear indication that they felt that if something was made non-removable prior to the federal removal statute, it probably remains non-removable. Also, we have to look at it in the broader context of maritime law. We know that general maritime law does not allow jury trials. The Jones Act, however, does allow a jury trial. But what do we do? Do we sever them? No, of course not. We allow the general maritime law unseaworthiness claim to be tried to a jury with the Jones Act claim. It's an indication that the courts are saying, look, we have the legislation and we have the court-created general maritime law. They can and do exist together, but the statutes inform how we view the general maritime law. I remember that we have a lot of district courts around the country dealing with this issue, but can you remind me if there are any circuit courts that have confronted, does the 1445 trump the 1442? Your Honor, I'm honestly not aware of a circuit court addressing it. I could be wrong, but as of my – I mean I have tried as the judge the Jones Act and unseaworthiness with the jury in state court, and so I know that they bring that there. But I'm wondering, is the trend a certain way? Are the cases continuing to hold that the 1445 governs and the Jones Act, or are they moving towards more federal jurisdiction and then splitting them? I think in general the trend is one to federalism. It's to respecting state courts and state rights, and when we have an explicit provision in maritime law that there's concurrent jurisdiction that state courts have it. I think, if anything, the trend is probably more towards letting the states handle that which the law says they're allowed to. I mean the problem as I see it is you have this principle about non-removability of Jones Act, respecting the state courts, and I have a great deal of respect for the state courts and all of that. But then you have this liberal construction of 1442, which is different from most removal statutes, which are to be strictly construed. So to me they are butting heads pretty hard, and I mean the magistrate judge decided to punt a little by saying, well, I don't think you have the 1442, so it doesn't matter if they butt heads. That's a fair point, and obviously if we conclude that we're done. But if we don't, I think it's a serious, difficult question. And so articulate to me the policies. I mean I understand that the state courts are capable of handling the Jones Act, and frankly pretty much everything anyway, but so are the federal courts. They're also capable of handling the Jones Act claims. So I guess the – I don't know that the state courts are going to just start crying if they don't have the Jones Act claims in front of them. I think they've got plenty of work. So it just – I guess while I understand the concept of respect, I'm not seeing that that necessarily trumps the liberality of the federal officer defendant. But is it about whether the courts want it or not, or is it about the right of the plaintiff to have the jury in the court in that jurisdiction? Well, that's exactly right, Judge. That's why it's called the Saving to Suitors Clause. It saves to suitors, the plaintiff, the right to have their maritime case tried in state court. If the state court is competent to do so, which it has been determined by the Supreme Court that the cases are competent to do so. But let's also look at 1442. And you've said, Judge Haynes, well, 1442 is supposed to be liberally construed. That might be true, but the impetus behind 1442 was we don't want federal officers being subjected to state law when they're in the course of their federal duties. That concern isn't implicated here. Whether this case is tried in state court or federal court, it's all federal law. It's federal admiralty and maritime law. It's reverse eerie. Yeah, but the U.S. removal statute lets it remove regardless of whether it's federal or state because they don't want to be in state court. And so I know that's not what's at issue here, but the U.S. can remove pretty much everything when they're sued for the reason that they get to have a federal court if they want it, even if it's all going to be federal law in state court. And even though the state courts are competent to decide federal law, the U.S. may decide they'd rather be in federal court. So that's the idea, too. It's not just state law versus federal law. It's the idea of the federal forum, the exact opposite of the suitor wanting state court. Okay, and that's a fair point. And that brings us back to why, if it's easy for the federal government to remove a case to federal court, why it should be hard for somebody who is not an employee of the federal government but is merely a contractor of the federal government to show that they were working at the specific direction of the federal government. And that brings us back to the causal nexus test, which, as Judge Elrod pointed out, that's the ultimate problem with their position. They claim that the district court judge impermissibly narrowed the test for federal officer removal. He didn't. He didn't do anything of the sort. He addressed every single aspect of that test, and he did so thoughtfully and thoroughly. What they're asking this court to do is to essentially eliminate the causal nexus part of federal officer removal. They're saying we're an employee, we're a contractor, the government hired us, and the government provided us some equipment, bang, we're immune. Well, they're not immune because they have to show a causal nexus between the specific directions of the federal government as that relates to the injuries complained of. And they haven't shown that. They've shown some general contracts. Even the contract, this fragment of a contract that they proffer, it says in subsection D, the contractor shall maintain and administer, in accordance with sound industrial practice, a program within the scope of its responsibilities, for the maintenance, repair, protection of the government property. This is, it's 153005.231. This is what they cite in their main brief at pages 18 and 19. And this is the only thing, this is the only contract provision that they cite in the main body, the argument of their opening brief. This is it. And if anything, this cuts against their argument. This is the government saying you are going to operate said vessel and maintain said vessel using sound industrial practices, which you presumably know better than we. And we're not telling you specifically how you're going to run it, how you're going to maintain it, how you're going to work your crews, how you're going to make sure that there's enough crew members to do the appropriate job to determine whether or not there's enough training, whether or not they have enough safety gear to do that. The government in the contract. I'm sorry. Thank you. Counselor, you really caught the wind, didn't you? Well, I wanted to end it on a good note. But just to, again, thank you. And the district court's opinion should be affirmed in this case. A number of things in no particular order. First, with respect to the contract, the entire contract was put into evidence in the district court. Page 15-3005.213 specifically says, the contractor shall manage and conduct the business of the government with respect to such tankers in accordance with such written directions or orders as to voyages and cargos as the commander of military sea transportation service may prescribe. Commander of military sea transportation shall issue to the contractor operating instructions, which may be revised and supplemented from time to time. We don't know what those were, which is exactly why on a removal basis we don't have to go back initially and go back 40, 50 years to try and find out what instructions were given. But the contract is broad. And that's for Mathiasson only? Is that correct? For this contract, yes. Yeah, so what record evidence do you have to look to support the causal nexus for American president lines and AMSEA? We do not have the contracts. We could not get the contracts for that. You have no record evidence for those two? Not yet. It's probably in the government archive somewhere. But does that mean you only can win on one? No, I think the statute's broad enough that I mean. And with no evidence of causal nexus? Well, removal is often determined on the face of the pleadings. That's the thing. We don't, under many removals, we don't have to come up with all the evidence then. But you have no contract in this record for those other two? Correct. Okay. Is there any evidence that the contract in the other two was similar to this one, or are we just guessing at that? We're just guessing at that right now. Appreciate your candor. Yes, Your Honor, always. Later on the contract, it specifically says, overhaul and dry docking cannot be done without government approval. Also, the contract shall make no structural changes in the machinery, boilers, appurtenances. That's all the things we're talking about that have asbestos. And getting back to unseaworthiness, there were a lot of questions about that. And in all candor, I wish I had briefed the unseaworthiness more. Sometimes you assume things that you can't predict with the magistrate or the judge is going to seize on, but we did mention it. This is de novo review. That's clearly a very important part of their claim, because I guarantee you for cases occurring in the old days, before there were warnings about asbestos, their only viable claim is going to be unseaworthiness, liability without fault. And all of a sudden, they will not even have an argument that we had a duty to warn, because nobody knew yet what the dangers of asbestos were. And to get back to one of the questions Judge Haynes had, yeah, we lose cases every day in the maritime world for vessel conditions that have no failure to warn, no negligence associated with it at all. Ships that come right out the shipyard may have a door that doesn't have a good latch. A seaman gets hurt or slammed. What do you say to Judge Reveley's point that we don't know the condition of the ship when it was turned over to you all? The argument by the plaintiffs has always been that the mere presence of asbestos makes the vessel unseaworthy. Okay, which we know was there. Which I would argue too if I had asbestos and was serving on a ship. That's the clearest argument for the plaintiffs who served on vessels before the Coast Guard started sending out notices warning about the dangers of asbestos. And when was that? 1980. Are you relying upon the 2011 amendment to 1442A1? Is that crucial for your argument or not really? The idea that it added or relating to? Is that part of this or do you think you win either way? I think either way. I mean, the cases, we've looked at a lot of cases before any of those amendments. Before. That's why you're not saying there's been a sea change, so to speak. Not in the cases. I'm a humble lawyer. I don't try and read statutes and predict what they say until the courts tell me. Okay. But you'll take it. I'll take it if it helps. But the cases have not really addressed that yet. But always, again, that helps broaden it. But throughout, it's always been broad removal, liberally construed. Doubts are resolved in favor of removability and then allow the merits to go forward. Why aren't you gutting our long-held respect for the saved-to-suitors if we rule for you today? I'm sorry. I didn't hear. Why aren't you gutting the way that we've treated saved-to-suitors? Why aren't you gutting this? If we go your way and we say the Jones Act case claims can stay here, or are you saying that we should slip them off? We're not doing what we've normally done. We've let them go. We've let the unseaworthiness go back with the Jones Act normally. Why aren't you changing things? Why isn't this a big deal and it's going to change the way seamen can get relief? And that's contrary to what Jones Act and why isn't this a big public policy problem? Well, again, our argument is this is not a Jones Act case. It's a Public Vessels Act case. So I don't think those issues come up. But there are Jones Act claims, and they are pled. Yes. So why aren't you harming public policy in this area for Jones Act plaintiffs? Two competing public policies. The U.S.'s public policy for cases where it's the defendant versus the plaintiff or the individual's right to go to state court. Federal courts, we think, are very well qualified to handle Jones Act and unseaworthiness cases like this. Okay. Thank you.